*683 OPINION.
Marquette:
The first question presented by the record herein is whether the petitioner, in computing his net income for 1923, is entitled to deduct the amount he paid to his sister, Edith H. Halton, in that year under the circumstances set forth in the findings of fact. The petitioner contends that the sister had an interest in the business of Edward Brown & Sons that antedated the death of Edward Brown, and that the amount paid to her represented her distributive share of the profits. The respondent has determined, and now maintains, that the payment to Edith H. Halton represented a capital expenditure by the petitioner.
On the record we can not disturb the respondent’s determination. The petitioner, his father, and his brother entered into an agreement among themselves on June 1, 1902, providing for the payment of a certain part of the profits of the partnership to the three daughters of Edward Brown (the sisters of the petitioner). Edward Brown died in 1904 and on May 27, 1905, a written contract was executed by the petitioner and his brother as surviving members of the partnership and as heirs and executors of Edward Brown, deceased, and by their three sisters as heirs and legatees under the last will and testament of Edward Brown, that apparently superseded the agreement of June 1, 1902. What the contract of May 27, 1905, provided for or reserved to the daughters of Edward Brown, we do not know, but in any event the surviving daughters agreed in writing on May 28, 1907, to accept $250 per month in satisfaction of all amounts ” which may be due, or may become due to us, or either of us, or to the survivor of us ” from the firm of Edward Brown & Sons under the agreement of May 27, 1905. Since we are not informed as to the terms of the contract of May 27, 19Q5, we are unable to determine what interest, if any, the sisters had in the business of Edward Brown & Sons under that agreement. Nor can we say, in the absence of that information, that the amount of $3,000 per year paid *684 by the petitioner to his sister in 1923 pursuant to the agreement of June 1, 1907, was a capital expenditure. The respondent has determined that it was a capital expenditure and the burden is upon the petitioner to show otherwise, which he has faded to do.
The second issue is as to the proper method of treating the overriding commissions received by Edward Brown & Sons during the taxable years in controversy. The petitioner contends that they should be returned as income upon the basis of a pro rata apportionment of such commissions to the policy years. In other words, the petitioner contends that'as to overriding commissions received for writing one-year policies, one-half should be returned as income of the year in which the policy was written and one-half as income of the next year; that as to commissions received for writing three-year policies, one-sixth should be returned as income of the year in which the policy was written, one-third as income of each of the first and second succeeding year, and one-sixth as income of the third succeeding year; and that as to commissions received for writing five-year policies, one-tenth should be returned as income of the year in which the policy was written, one-fifth as income of each of the first, second, third, and fourth succeeding years, and one-tenth as income of the fifth succeeding year. The method assumes that all policies written in any one year were issued as of the average date of July 1, and, in that respect, resembles the method generally used by insurance companies for computing the unearned premium reserve.
It is to be observed that the method of computing overriding commissions income now contended for is not the method employed in keeping the firm’s books of account. It has been the firm’s consistent practice to account for overriding commissions on new business as income of the year in which the business was written; and any departure from that practice now can only be justified on the ground that net income will be more clearly reflected. Section 212 (b), Revenue Acts of 1921, 1924, and 1926.
It is argued in petitioner’s behalf that the overriding commissions paid by the insurance companies to the firm of Edward Brown & Sons in any one year represent compensation for services rendered in that year and compensation for services to be rendered in later years while the policies, in respect of which the commissions were paid, continue in force; that such portion of the commissions as represents compensation for services to be rendered in later years can not be considered as earned until the required services have been performed; and that the taxing statutes contemplate that a taxpayer keeping books on the accrual basis shall account for income only as it is actually earned.
The argument assumes much, for which there is no support in the record. There is no proof that the overriding commissions contain *685 any element of compensation for services to be rendered in future years. On that point the contracts are entirely silent; and there is no positive evidence that the payment of these commissions by the insurance companies created any obligation on the part of the firm to continue to render services while the policies remained in force. The firm made monthly settlements with the insurance companies, withholding the overriding commissions to which it was entitled on the business written during the month. For aught that the written contracts provide, the firm could have ceased to do business following any one of such settlements without any obligation to render further services or to refund any part of the overriding commissions, except in the event of cancellation of any of the policies prior to the ends of the terms for which they were written or in case of reinsurance of any part of the business covered by those policies.
The argument also assumes that the overriding commissions are paid solely for such services as may be required in connection with the procuring of new business and the adjustment of matters arising out of the policy contracts. This is clearly not the case. The compensation provisions of the contracts, which base the compensation, in part, upon stated percentages of the net premiums written, provide merely the measure of the compensation to be paid the firm for carrying on all of the duties of a general agency. These duties include many which can not be definitely related to any particular line of business, such as the appointment and removal of local agents, representation of the firm’s principals on the Pacific Board of Fire Underwriters, preparation and submission of reports required of the firm’s principals by the authorities of political subdivisions in the territory in which the firm operates, attending to the payment of all fees, licenses and taxes, furnishing descriptive advertising to local agents, etc.; and for these duties the firm is compensated, in part, out of the overriding commissions.
In our opinion, the overriding commissions withheld by the firm in its settlements with the insurance companies represent compensation for services rendered in the periods covered by those settlements, constitute earnings of those periods, and must be accounted for as income of the same periods. Cf. Automobile Underwriters, Inc., 19 B. T. A. 1160.
As an alternative, the petitioner seeks to compute its commission income by deducting from the gross commissions earned in each year, such an amount as the past experience of the business indicates will probably have to be refunded to insurance companies on account of cancellation of policies and reinsurance with other companies, the amount to be deducted in each year being the same proportion of the gross commissions earned within the year as the total fire premiums canceled during the preceding five-year period bears to the gross fire *686 premiums written in the same period. This is merely an attempt to compute the income of the years in controversy upon a basis that will reflect the contingencies of the future. Essentially it is not different from the setting up of a reserve for future contingencies; and however certain it may appear, from the past experience of the business, that -such contingencies will arise, such procedure is clearly not countenanced by the taxing statutes. William J. Ostheimer, 1 B. T. A. 18; Consolidated Asphalt Co., 1 B. T. A. 79; Uvalde Co., 1 B. T. A. 932; Cronin Co. v. Lewellyn, 9 Fed. (2d) 974; Pan-American Hide Co., 1 B. T. A. 1249; Morrison-Ricker Mfg. Co., 2 B. T. A. 1008; Thatcher Medicine Co., 3 B. T. A. 154; Greenville Coal Co., 3 B. T. A. 1323; H. Northwood & Co., 4 B. T. A. 697; Lane Construction Corporation, 4 B. T. A. 1133; H. V. Greene Co., 5 B. T. A. 442; Liberty Agency Co., 5 B. T. A. 778; Farmers National Bank, 6 B. T. A. 1036; Frank J. Jewell, 6 B. T. A. 1040; Lehigh & Hudson River Railroad Co., 13 B. T. A. 1154; Lane Construction Corporation, 17 B. T. A. 826; Automobile Underwriters, Inc., supra. See also, Consolidated Tea Co. v. Bowers, 19 Fed. (2d) 382; and Malleable Iron Range Co. v. United States, 62 Ct. Cls. 425.

Judgment will be entered under Rule 50.